[Civil No. 2162.   Filed September 24, 1925.]

[239 Pac. 290.]

# ARIZONA COMMERCIAL MINING COMPANY, a Corporation, Appellant, v. IRON CAP COPPER COMPANY, a Corporation, Appellee.

1. APPEAL AND ERROR—JURISDICTION OF APPELLATE COURT DOES NOT TERMINATE UNTIL CASE RETURNED TO TRIAL COURT.—Jurisdiction of appellate tribunal, in absence of constitutional provision or statute, does not terminate until case has been returned to trial court.

2. APPEAL AND ERROR—APPELLATE COURT MAY RECALL JUDGMENT AFTER MANDATE HAS BEEN SENT DOWN.—Appellate court may recall judgment after mandate has been sent down to trial court.

3. MINES AND MINERALS—COMPLAINT HELD TO SUPPORT CAUSE OF ACTION UNDER STATUTE RELATIVE TO DETERMINATION OF ADVERSE CLAIMS.—Where defendant, by three separate suits in court, made claim to thousands of dollars from plaintiff, and such claims could only be sustained on theory that it had an interest in mining property adverse to plaintiff, a complaint in an action to determine adverse claims under Civil Code of 1913, paragraph 1623, alleging such facts was sufficient, and unquestionably conferred jurisdiction on court to entertain suit.

4. ESTOPPEL—ONE ASSERTING IN COURT THAT VEINS OF ANOTHER'S PROPERTY ARE SEGMENTS OF VEIN APEXING IN HIS CLAIM CANNOT PLEAD IGNORANCE AS TO FACTS ON BEING SUED BY ANOTHER TO

---

1. See 2 R. C. L. 265.

QUIET TITLE.—Where party has once asserted in court that certain veins of mineral matter lying within the bounds of another's property are underground segments of equally well defined veins apexing in his claim, in a suit brought against him by such other party to quiet title, he may not, by a plea of ignorance as to the facts, prevent his opponent from having the title, which he himself has asserted, determined.

5. MINES AND MINERALS—PARTY ASSERTING CONTINUITY OF VEINS, BUT FAILING TO ASCERTAIN TRUTH OF ASSERTIONS WITHIN REASONABLE TIME, CANNOT COMPLAIN IF DECREE IS RENDERED AGAINST HIM ON PRESUMPTION THAT ALLEGED FACTS DID NOT EXIST.— Where a party asserted continuity of vein of mineral, but did not in a reasonable time ascertain such fact, he cannot complain if decree is rendered against him on presumption that alleged fact does not exist, especially where a contrary course would result in serious damage to adverse party.

6. MINES AND MINERALS—PARTY ASSERTING OWNERSHIP TO VEIN IN ANOTHER'S EXTERIOR BOUNDARIES, ON GROUND THAT VEIN APEXES OUTSIDE OF SUCH CLAIM, HAD BURDEN OF PROVING THAT FACT.— When it appears that ore lies within the exterior boundaries of a mining claim, party asserting ownership thereto, on the ground that vein which contains it apexes outside of such claim, bears burden of proving his assertion.

7. TRIAL—FINDING WILL BE AGAINST PARTY HAVING BURDEN OF PROOF, WHERE NO OR INSUFFICIENT EVIDENCE IN SUPPORT OF ISSUE INTRODUCED, AND FAILURE TO FIND ON ISSUE DEEMED FINDING AGAINST SUCH PARTY.—Finding will be against party having burden of proof, where no or insufficient evidence in support of issue is introduced, and failure to find on issue is deemed finding against such party.

8. APPEAL AND ERROR—TRIAL COURT DEEMED TO HAVE MADE EVERY FINDING NECESSARY TO SUPPORT JUDGMENT.—Trial court deemed to have made every finding necessary to support judgment.

9. APPEAL AND ERROR—FINDING SUPPORTED BY EVIDENCE, OR BASED ON REASONABLE CONFLICT IN EVIDENCE, NOT DISTURBED.—Finding of trial court supported by evidence, or based on reasonable conflict in evidence, will not be disturbed.

10. MINES AND MINERALS—COURT JUSTIFIED IN HOLDING THAT DEFENDANT HAD NOT PRESENTED SUFFICIENT EVIDENCE TO SUSTAIN BURDEN OF PROVING APEX OF VEIN WAS OUTSIDE OF PLAINTIFF'S PROPERTY.—In an action to determine adverse claim, where de-

---

5.  See 18 R. C. L. 1163.
9.  See 2 R. C. L. 204.

fendant claimed ownership of vein, as apex was outside of plaintiff's claim, *held*, that defendant had not sustained burden of proving such fact.

See (1) 4 C. J., p. 1244 (Anno.).   (2) 4 C. J., p. 1245.   (3) 27 Cyc., p. 654.   (4) 21 C. J., p. 1226.   (5) 27 Cyc., p. 655 (Anno.). (6) 27 Cyc., p. 655 (Anno.).   (7) 38 Cyc., p. 1985.   (8) 4 C. J., p. 778.   (9) 4 C. J., pp. 2853, 2855.   (10) 27 Cyc., p. 656 (Anno.).

On rehearing of appeal from a judgment of the Superior Court of the County of Gila. Samuel L. Pattee, Judge. Judgment of trial court modified and affirmed.

For former opinion, see 27 Ariz. 202, 232 Pac. 545.

Messrs. Ellinwood & Ross, Messrs. Dunbar, Nutter & McClennen and Mr. Edward F. McClennen, for Appellant.

Mr. John P. Gray, Messrs. Morris & Malott, and Mr. Burton E. Eames, for Appellee.

LOCKWOOD, J.—The original opinion of this court was filed January 3rd, 1925. A petition for rehearing was presented by appellee January 14th, and was denied March 27th. Thereafter appellee, on March 31st, asked for a stay of mandate, and on April 10th appellant petitioned that the mandate be sent down to the superior court. No action was taken on either of these two matters, but on April 21st a supplemental petition for rehearing was presented by appellee, which was argued orally June 8th, and on June 18th an order was entered granting the petition for rehearing.

Appellant objected to the supplemental petition upon the ground, among others, that this court had, after its ruling of March 31st, lost jurisdiction of the case, except for the purpose of ordering the mandate sent down. We do not think this point well taken. The jurisdiction of an appellate tribunal, in the ab-

sence of a constitutional provision or statute, does not terminate until the case has been returned to the trial court. *Thomas* v. *Thomas,* 27 Okl. 784, Ann. Cas. 1915C, 713, 35 L. R. A. (N. S.) 124, 133, 109 Pac. 825, 113 Pac. 1058. Indeed, the right of recalling the judgment has frequently been exercised even after the mandate has been sent down. *Ehrig* v. *Adams,* 67 Okl. 157, 169 Pac. 645; *McBride* v. *Coleman,* 189 Ind. 7, 125 N. E. 499; *Franklin Bank Note Co.* v. *Mackey,* 157 N. Y. 674, 51 N. E. 178.

After careful deliberation, we have concluded to reconsider the case as of first impression, and, in order that this opinion may be more intelligible, we shall restate the facts even though it may involve to a considerable extent a repetition of our previous opinion.

The Arizona Commercial Mining Company, a corporation, hereinafter called appellant, was the owner of certain mining claims located in Gila county, Arizona, while the Iron Cap Copper Company, a corporation, hereinafter called appellee, was the owner of certain other mining claims lying contiguous to those of appellant. The claims owned by the appellant are the older by location and patent, and there is no dispute concerning surface rights or boundary lines.

Among the claims of appellee are four known as the Iron Cap, Columbus, Marjorie, and Free America, and from certain ore bodies, located beneath the surface of these claims in well-defined vein formations, appellee had extracted a large quantity of valuable ore. Some time after the extraction of these ores, appellant brought suit against appellee in the courts of Massachusetts, where both parties had executive offices, to recover their value, and later similar proceedings were commenced in the courts of Maine where both corporations were domiciled. The Massachusetts courts declined jurisdiction of the matter for reasons stated in *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.,* 233 Mass. 522, 124 N. E. 281,

and *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.*, 236 Mass. 185, 128 N. E. 4. The courts of Maine, however, entertained jurisdiction of the action, but said; in *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.*, 119 Me. 213, 110 Atl. 429, that their decision, "may involve a finding, not indeed as to who owns a mining lode in Arizona, but as to who did own such lode when ore, the proceeds of which are subject to our jurisdiction was severed from it"; and that case is still pending, subject to the judgment in this action.

Appellee then brought suit in the superior court of Gila county against appellant setting up its ownership of the mining claims above described, and alleging "that the Arizona Commercial Mining Company claims and has claimed an estate or interest adverse to the plaintiff in and to the said Iron Cap lode mining claim, Columbus lode mining claim, Marjorie lode mining claim, and Free America lode mining claim, and to the veins and ore beneath the surface thereof, and therein contained, . . . " and the usual allegations that the exact nature of these claims was unknown to appellee, and that they were false and groundless and a cloud upon appellee's right, title, and interest to the claims, and to the veins and ores therein contained.

The complaint further recited the bringing of the suits by appellant in Massachusetts and in Maine, and the substance of the claims made by it in those suits. It appears therefrom that in Maine the Arizona Commercial Company's complaint alleged in part as follows:

"That among the veins, lodes, and ledges which have their top or apex within the complainant's patented mining claims aforesaid, are those described as the Black Hawk and the Old Dominion veins, . . . and continuously through the six years last past, the respondent has taken . . . and converted to its own

use certain ores, . . . all of which were at all times the property of the complainant, and originally came from those portions of the veins, lodes, and ledges aforesaid which had their top or apex upon the mining claims aforesaid,''

—and further asked for an injunction against the respondent, preventing it from taking any further ores from the aforesaid veins, the pleadings in the Massachusetts courts being substantially the same.

Appellant demurred to the complaint herein on the ground it did not appear that the appellee's title had been assailed or that the proceedings in New England had the effect of clouding its title. It then answered and, referring to that portion of the complaint which dealt with the suits in Massachusetts and Maine, admitted the allegations of the complaint in so far as it set up the pleadings of appellant in Maine and Massachusetts, but alleged in effect that such claims, though made, were not claims to any interest in or to real estate, but merely to personal property. The answer then described the surface boundaries of the Cochise, Defiance, Copper Hill, Matamora, and Omega claims of appellant's, with their location and the apices of the Old Dominion and Black Hawk veins as they appear on the surface of those claims, and, after setting up that it claimed extralateral rights to such veins under section 2322, R. S. U. S. (U. S. Comp. Stats. § 4618), alleged as follows:

"(39) The points at which the Old Dominion vein, on its dip within the vertical planes aforesaid, enters the lode mining claims described by the plaintiff as its property in the bill of complaint, and the extent therein it is impossible to state in the present condition of development of the mines.

"(40) The points at which the Black Hawk vein, on its dip within the vertical planes aforesaid, enters the lode mining claims described by the plaintiff as its property in the bill of complaint, and the extent

therein, it is impossible to state in the present condition of development of the mines.

"(41) The Old Dominion vein within the limits aforesaid, on its dip into the Iron Cap claim aforesaid beneath the east line of the Defiance claim (line G–J on said plan), has been encountered at the 700th and 800th level, and has been mined out in the Iron Cap claim at these points, and has been mined by the defendant in the Defiance claim up to the vertical plane of this east side line of the Defiance claim (line G–J on said plan).

"(42) This point of encounter on the 700th level is from one hundred ten (110) to one hundred twenty-five (125) feet south of the vertical plane of the northerly boundary of the Defiance claim measured on the easterly boundary, and on the 800th level, it is approximately ten (10) feet further south. In higher unopened levels it probably crosses at points more to the north, and at lower unopened levels at points more to the south.

"(43) Whether or not there remains unexhausted within the property described as the plaintiff's in the complaint any part of the Old Dominion vein, or said Black Hawk vein, the defendant does not know, and the defendant says that the probabilities that there is such a vein are such that the defendant should not be deprived of the right to claim it if and when the development of the properties discloses its existence. . . . ''

Appellee replied, and specifically denied that the Black Hawk and Old Dominion veins dipped into its property in any manner from the claims of the appellant, and further set up that, notwithstanding the allegations of paragraphs 39, 40, and 43 of the answer, wherein appellant stated that it was impossible to determine the points where the Black Hawk and Old Dominion veins entered appellee's property, and whether or not there was any part of the said veins existing unexhausted in appellee's property, that appellant nevertheless had sought to recover from appellee the value of all the ores taken by appellee from

its property, on the claim made by appellant in the Massachusetts and Maine courts that they came from the Black Hawk and Old Dominion veins which apexed within the claims of the appellant where they dipped into the ground of appellee. The demurrer was overruled by the trial court, and the case went to trial upon the issues made by the complaint, answer, and reply.

The matter was heard before the court sitting without a jury, and a large amount of evidence presented. Much of this evidence was offered by appellant in an attempt to show the veins from which the ore in dispute was taken were underground segments of the Old Dominion and Black Hawk veins, which apexed within appellant's ground, and such has been its contention ever since this controversy first arose, except as it may be deemed modified by its pleading of ignorance above set forth.

After the testimony was all in and the case argued, appellant requested the court to make some forty-five findings of fact. Among these, the vital ones to be considered upon the determination of this case are the following:

"(11) The apex of the underground segment of the vein described in the defendant's answer as the Old Dominion vein crosses the vertical plane of the southerly boundary line of the Defiance claim.

"(12) The apex of the underground segment of the vein, described in the defendant's answer as the Old Dominion vein, crosses the vertical plane of the northerly boundary line of the Defiance claim.

"(13) The apex of the underground segment of the vein described in the defendant's answer as the Old Dominion vein, as projected in its own course on the strike of the apex in both directions, would cross the vertical plane of the northerly and southerly boundary lines of the Defiance claim. . . .

"(42) The so-called Iron Cap vein beneath the Iron Cap claim is the same vein as the so-called segment of

the Old Dominion which appears under the easterly part of the Defiance claim. . . .

"(44) Up to the time that this suit was brought, the defendant had made no claims, as far as appears, concerning any ore beneath the plaintiff's claims, or coming therefrom, except the bills in equity in Massachusetts and in Maine, and the declaration at law in Massachusetts referred to in the complaint and the case that is at bar. . . .."

The trial court, September 29th, 1922, filed a written memorandum of findings of fact, in which, among other things, it expressly disallowed each of the above quoted requested findings, except 44, but allowed that finding with the addition, "and the other proceedings had in the action in Massachusetts and Maine."

On October 9th the court filed a decree which reads in part as follows:

"And the court, being fully advised, now finds, orders, decrees, and adjudges as follows: . . . That the defendant, Arizona Commercial Mining Company, has asserted an adverse claim to the veins from which the said ores have been mined in the said mining claims of the plaintiff, . . . and has asserted and has introduced evidence for the purpose of showing that the veins within the said mining claims of the plaintiff, and heretofore mined by the plaintiff and called by the plaintiff the Iron Cap vein, the No. 2 vein, and the Free America vein, apexed in the mining properties of the defendant, and were the property of the defendant : . . by virtue of its alleged ownership of two veins called by it the Black Hawk vein and the Old Dominion vein.

"That the said veins of the plaintiff's above described do not have their top or apex within the mining properties of the defendant, and the mineral bearing ores so extracted and removed heretofore by the plaintiff are not a part of any vein or veins, or lode or lodes, having its or their top or apices within any mining claim or properties of the defendant described in the answer. . . . "

The court then decreed that the title of the appellee be quieted as against any claim of appellant "in and to the veins now and heretofore worked by the defendant within said mining claims, . . . as against any assertion of extralateral rights by the Arizona Commercial Mining Company, based upon the veins called by it the Old Dominion and Black Hawk veins, or either thereof, or the ownership of any part of either thereof, . . . " and an injunction was duly issued in accordance with the above findings and decree, enjoining the defendant against asserting any right to any ores "by virtue of any claim of extralateral rights based upon the ownership of said so-called Old Dominion vein or said so-called Black Hawk vein, or either thereof, or any part of either thereof."

The first question for us to determine is the correctness of the court's ruling on the general demurrer: Did the complaint state a cause of action under paragraph 1623, R. S. A. (Civ. Code) 1913? That paragraph reads in part as follows:

"An action to determine and quiet the title to real property may be brought by anyone having, or claiming, an interest therein, either, in or out of possession of the same against any person or corporation or the state of Arizona, when such person, corporation or state claims any estate or interest, adverse to the party bringing the suit, in or to the real estate, the title to which is to be determined or quieted by the action brought. . . . "

Appellant herein had in the most solemn manner, to wit, by three separate suits in court, made claim to many hundred thousands of dollars from appellee, and such claim could be sustained only on the theory that it had an interest adverse to the appellee in a certain portion of real estate which was claimed by appellee, being that portion of the mineral veins in the ground of appellee which contained the ore, the proceeds of which were in dispute. It is difficult to

see how a more definite and determined claim of an "estate or interest adverse to the party bringing the suit" in the veins in question could be made. The superior court of Gila county unquestionably had jurisdiction to entertain the suit to quiet title (*Curtis v. Sutter,* 15 Cal. 259; *Ely* v. *New Mexico R. Co.,* 129 U. S. 291, 32 L. Ed. 688, 9 Sup. Ct. Rep. 293 (see, also, Rose's U. S. Notes); *Castro* v. *Barry,* 79 Cal. 443, 21 Pac. 946); and the extent of the claim made by the appellant obviously went to the entire veins from which such ore was taken, in so far as they were continuations of the Old Dominion and Black Hawk veins, under the law of extralateral rights.

It is contended by appellant, however, that, notwithstanding this may be true, yet, since by its answer it sets up the impossibility of at the present time determining whether or not the underground veins in question are as a matter of fact continuations of the Old Dominion and Black Hawk veins, the court is without jurisdiction to quiet title to what remains in the ground of those veins, as against the possibility of its being later determined that they are extensions of the Old Dominion and Black Hawk.

Appellant's position upon this point, substantially, is that it may set up a definite and specific claim to many hundred thousands of dollars of ore, necessarily based on a positive allegation that it was taken from underground segments of certain named and described veins apexing in its own property, may put appellee to great expense in defending against that claim, and then when it appears that proof of its contention may fail, by merely pleading ignorance of the facts, without abandoning its claim on the ores as already made, it may for an indefinite period of time maintain a cloud on appellee's title to its remaining ore bodies in such veins without either affirming or disclaiming any rights therein.

Such contenton seems to us the height of injustice; A. may not assert in court a right against B., and then when B. by affirmative action attempts to determine that right, set up that he neither affirms nor denies B.'s right nor his own, and thus leave the matter *in statu quo* indefinitely. To paraphrase the language of the Scripture, "He has appealed to Caesar; to Caesar let him go."

We are of the opinion that when a party has once asserted that certain well-defined veins of mineral matter lying within the bounds of another's property are underground segments of equally well-defined veins apexing in his claims, he must then stand or fall, in so far as that particular assertion is concerned, in the suit brought to quiet title as against it, and may not by a mere plea of ignorance as to the facts prevent his opponent from having the title which he himself has asserted being then and there determined.

We see nothing in the cases of *Keely* v. *Ophir Hill Consolidated Mining Co.,* 169 Fed. 601, 95 C. C. A. 99, and *Butte & Superior Copper Co.* v. *Clark-Montana Realty Co.* (D. C.), 233 Fed. 547, and 248 Fed. 609, 160 C. C. A. 509, and 249 U. S. 12, 63 L. Ed. 447, 39 Sup. Ct. Rep. 231, contrary to the view expressed above. The Keely case holds very correctly, in answer to the question "whether a locator of a claim in a mining district, where there may be extralateral rights existing in favor of others who own contiguous or neighboring claims, may compel all others who may have such extralateral rights to assert and make proof of them within the short time permitted by the rules and practice in equity or be thereafter forever barred from claiming [the ore within] them, . . . " that "it is only when a claim of an adverse estate . . . is made that the owner can avail himself of this remedy."

In the case at bar that particular claim of adverse estate in the specific veins, to which title was quieted

by the trial court, was made. Had appellant refrained from laying claim to those particular underground veins in appellee's ground on the theory that they apexed in the Old Dominion and Black Hawk veins in its own property, appellee's title thereto could not have been quieted in this action.

In the Clark-Montana case the trial court reserved its judgment as to the undeveloped portions of a certain vein, admittedly apexing in plaintiff's ground and passing into the ground of defendant, where it did not appear just what junction might occur between that vein and others apexing in defendant's junior location. This reservation was evidently made as a matter of discretion, and not of right, and the Supreme Court of the United States, in affirming the judgment, said:

"It is true the apex of the Pyle Strand was found to be within the Elm Orlu, but all else as to the vein was reserved and, in the circumstances, properly reserved. There was simply retention of the case for supplementary proceedings, as the Circuit Court of Appeals observed, to carry out the decree and make it effective under altered circumstances. . . . "

Both parties in that action were, and had been, making every possible effort to develop the property and determine their rights from the beginning of the litigation, and there was a strong probability that a short time would discover the exact interests of the litigants, with no damage done by the delay.

In this case, the Arizona Commercial first laid claim to the underground veins in the Iron Cap ground in February, 1919, and the issue was tried in the lower court in November, 1921, nearly three years later. In an affidavit filed on behalf of appellant, asking for a continuance, it appears that work could easily have been done which would have disposed definitely of the question of whether or not the Iron Cap veins were, indeed, continuations of the Old

Dominion and Black Hawk, within approximately a year's time, and at an expenditure of between One Hundred Twenty-five Thousand Dollars and One Hundred Fifty Thousand Dollars.

Notwithstanding this fact, it appears that during the three years in which appellant was asserting the continuity of its veins it made comparatively little effort to ascertain whether in fact they were as claimed, relying apparently on expert opinion testimony rather than actual development underground. Where it appears that a party making a claim has had ample time and opportunity to ascertain the facts, and that he has failed or neglected to do so, he is not· in a position to complain if a decree is rendered against him on the presumption that his alleged facts do not exist, especially when a contrary course would result in serious damage to the adverse party.

To sum up on this point, the superior court of Gila county had jurisdiction to quiet the title, not only to the ores taken from the Iron Cap ground, but to the remainder of the specific veins from which said ore had been taken, as against any claim that they were underground segments of the Old Dominion and Black Hawk veins. The questions of the Iron Cap veins which were in dispute being a continuation of veins of the appellant other than the Old Dominion and Black Hawk, and of those two or any other veins apexing on appellant's ground, having underground segments not among those in dispute in this action, unknown to and unclaimed by either party at the present time, were not involved in the issues herein, or subject to determination by the judgment rendered.

Such being the extent of the jurisdiction of the trial court, we pass to the question of whether or not it was properly exercised in the judgment. In so determining ·we use four well-settled propositions of general law as our guides:

First, when it appears that ore lies within the exterior boundaries of a mining claim, the party asserting ownership thereto, on the ground that the vein which contains it apexes outside of such claim, bears the burden of proof of his assertion. *Con. Wyoming G. M. Co.* v. *Champion Co.* (C. C.), 63 Fed. 540, 550; *St. Louis M. & M. Co.* v. *Montana M. Co.*, 194 U. S. 235, 48 L. Ed. 953, 24 Sup. Ct. Rep. 654 (see, also, Rose's U. S. Notes); *Tom Reed Gold Mines Co.* v. *United Eastern M. Co.*, 24 Ariz. 269, 209 Pac. 283–290.

Second, where no evidence is introduced in regard to an issue, or the evidence introduced is insufficient to support it, the finding thereon should be against the party having the burden of proof, and an omission of the findings to cover a particular fact or issue is to be deemed a finding on that fact or issue against the party having the burden of proof. 38 Cyc. 1985.

Third, the trial court will be deemed to have made every finding of fact necessary to support its judgment. *Blackford* v. *Neaves*, 23 Ariz. 501, 205 Pac. 587; *Babbitt & Cowden Live Stock Co.* v. *Hooker*, 28 Ariz. 263, 236 Pac. 722.

Fourth, when the findings of the trial court either specifically made or implied from the previous rule are supported by reasonable evidence, or based on a reasonable conflict of the evidence, they will not be disturbed by this court. *Blackford* v. *Neaves, supra; Willard* v. *Carrigan*, 8 Ariz. 70, 68 Pac. 538; *Webber* v. *Kastner*, 5 Ariz. 324, 53 Pac. 207.

The trial court filed a memorandum opinion under date of September 21st, 1922, and thereafter a memorandum on certain findings of fact requested by defendant September 29th, and a formal judgment embracing findings of fact, conclusions of law, and a judgment based thereon October 9th. Technically speaking, this last document contains the findings of fact on which the judgment is presumably based.

We have quoted those findings previously in this opinion, and they are definite and specific to the effect that the veins called by the plaintiff Iron Cap, No. 2, and Free America "do not have their top or apex within the mining properties of the defendant, and the metal bearing ores, so extracted and removed, heretofore by the plaintiff, are not a part of any vein or veins or lode or lodes having its ore and top or apices within any mining claim or properties of the defendant described in the answer."

Standing alone, this is a positive and explicit finding which, under the law, denies appellant any extralateral rights whatever in or to the named veins, and we might well rest our decision on this finding. Appellant contends, however, that the other two documents referred to contradict it, and show the trial court held that some at least of the veins in appellee's property had their apex in the Defiance claim of appellant. Such holding does not appear anywhere in the court's rulings on the findings asked by appellant, and it expressly denied the following one:

"(42) The so-called Iron Cap vein beneath the Iron Cap claim is the same vein as the so-called segment of the old Dominion which appears under the easterly part of the Defiance claim."

Nor can we see where appellant is aided by the memorandum opinion of September 21st, for therein, referring to both the discovery vein of the Defiance claim and the so-called Old Dominion vein, the court says:

"It is impossible to find that the apex of any of the Iron Cap workings is found in either of these veins."

In the next paragraph of the memorandum opinion, the court discusses the matter of pursuing extralateral rights on the dip or on the strike, but since it has just before stated that the apex of the Iron Cap workings cannot be found in either the discovery vein

or Old Dominion vein of the Defiance, it is merely a moot question.

The only remaining contention is that the court stated, "with one or two exceptions, there is no dispute as to the physical facts"; and appellant apparently argues therefrom that since it claimed the Iron Cap workings apexed in its property, the court held such claim to be correct. The isolated quotation given does not justify this conclusion, for it is apparent on reading the whole opinion that the court meant there were not sufficient physical facts to support appellant's claim that the Old Dominion and Black Hawk veins, apexing in its ground, were the upper parts of the Iron Cap, No. 2, and Free America veins of appellee; but that appellant's position was based solely on expert professional opinion evidence. Without reviewing in detail the very voluminous testimony of the experts, we are satisfied the trial court was entirely justified in holding appellant had not presented sufficient evidence to sustain the burden of proof required by rule 1 above set forth, and its findings of fact must be upheld by us.

From the foregoing findings and the law as stated by this court, the trial court's judgment properly quieted the title of appellee "in and to the veins now and heretofore worked by the plaintiff within said mining claim . . . as against any assertion of extralateral rights by the Arizona Commercial Mining Company, based upon the ownership of the veins called by it the Old Dominion and Black Hawk veins, or either thereof, or the ownership of any part of either thereof."

We are of the opinion, however, that the injunction granted by the decree is too broad in its terms. Literally construed, it might prevent the appellant from hereafter showing the Black Hawk and Old Dominion veins continued in appellee's ground in some independent and now unknown workings or ore bodies dis-

tinct from the Iron Cap, No. 2, and Free America veins, and not heretofore in any manner claimed by appellant. That portion of the decree will therefore be modified to read as follows:

"And the said defendant, its agents, and employees, and all persons acting, or pretending to act, by, through or under it, be perpetually enjoined and restrained from in any manner entering into or within said mining claims of the plaintiff for the purpose of working or mining or removing from said mining ground of the plaintiff, or any part thereof, any rock or mineral substance whatever, found in the veins now and heretofore worked by the plaintiff within its mining claims, under or by virtue of any claim of extralateral rights based upon the ownership of said so-called Old Dominion vein or so-called Black Hawk vein, or either thereof, or any part thereof, and said defendant, its agents and employees and all persons acting or pretending to act by, through or under it, be perpetually enjoined and restrained from in any manner asserting any right, title, and interest of, in, or to, any ores or minerals within, or removed from the veins now and heretofore worked by plaintiff within its mining claims aforesaid, by virtue of any claim of extralateral rights based upon the ownership of said so-called Old Dominion vein or so-called Black Hawk vein, or either thereof, or any part of either thereof."

And, as so modified, the judgment of the lower court is affirmed.

Since the modification is simply in the form of the injunctive relief in order to make it more clear, and does not affect the substance of the judgment, appellee will recover its costs herein.

McALISTER, C. J., and ROSS, J., concur.