[Civil No. 2707.  Filed December 17, 1928.]

[272 Pac. 652.]

THE MERCHANTS & STOCKGROWERS BANK, a Corporation, and GILBERT E. GREER, WM. H. DAGG, JOSEPH UDALL, JULIUS WETZLER, C. H. BROWN et al., Appellants, v. A. T. HAMMONS, Superintendent of Banks of the State of Arizona, and Ex-officio Receiver of the BANK OF WINSLOW, an Insolvent Banking Corporation, Appellee.

Mr. Levi S. Udall and Mr. Gilbert E. Greer, for Appellants.

Mr. Sidney Sapp and Mr. Joseph H. White, for Appellee.

LOCKWOOD, J.—A. T. Hammons, hereinafter called plaintiff, brought suit as superintendent of banks of the state of Arizona and *ex-officio* receiver of the Bank of Winslow, against Merchants & Stock Growers Bank, a corporation, hereinafter called defendant, and Gilbert E. Greer, William H. Dagg, Joseph Udall, Julius Wetzler, H. M. Moritz, C. H. Brown, and Dena S. Hulet, as executrix of the estate of John R. Hulet, deceased, hereinafter called the guarantors. The complaint set up, in substance, that defendant in May, 1924, made, executed and delivered to the Bank of Winslow its promissory note for $274,192.69, with interest; that said note provided for the pledging of certain collateral notes as security therefor, which notes were in the wrongful possession of Gilbert E. Greer, one of the guarantors above; that at the time of the execution of the note the guarantors made and delivered to the Bank of Winslow a written guaranty in terms as follows:

"Know all men by these presents, that

"Whereas the Merchants and Stockgrowers Bank, a corporation organized and existing under and by

virtue of the laws of the state of Arizona with its principal place of business at Holbrook, Navajo County, Arizona, has this day made, executed and delivered to the Bank of Winslow, a corporation organized and existing under and by virtue of the laws of the State of Arizona, with its principal place of business at Winslow, Navajo County, Arizona, its certain promissory note in the sum of Two Hundred Seventy Four thousand one hundred ninety two and 69/100 Dollars which said note is secured by assignment, guaranties and collateral attached thereto, and

"Whereas, said collateral or part thereof is of doubtful value and

"Whereas, the undersigned are desirous of further securing said The Bank of Winslow and of guaranteeing the full payment of said promissory note,

"Now, therefore, In consideration of the consolidation of said banking corporations and the mutual personal benefit and advantages coming to the undersigned by reason thereof, and for other good, valuable and adequate consideration, the undersigned, John R. Hulet, H. M. Moritz, and Julius Wetzler, of Holbrook, Arizona, Jos. Udall, Eagar, Arizona, Wm. H. Dagg, Winslow, Arizona, C. H. Brown, Long Beach, California, and Gilbert E. Greer, St. Johns, Arizona, hereby and by these presents guarantee to said Bank of Winslow and to its successors and assigns that said promissory note shall upon demand be paid in full, and the undersigned and each of them do hereby acknowledge themselves and himself to be obligated to pay the full face value of said paper, together with interest thereon at the due date thereof.

"It is understood, however, that the proceeds of any and all collateral attached to said paper shall be applied to said paper as of the date it is received and that the undersigned shall thereupon be credited upon this Guaranty to that extent.

"It is expressly understood and agreed that this Guaranty shall apply to all extensions and renewals of said note, and the undersigned hereby consent that the collateral or security attached to said note may be extended and renewed from time to time without further notice to or further assent from or demand

upon the undersigned or any of them. Presentment, protest and demand, and notice of every kind is hereby expressly waived.

"This guaranty shall be binding upon the heirs, executors, administrators, legatees and devisees of the undersigned.

"Witness our hands this 14th day of May, 1924.

"JNO. R. HULET.
"WM. H. DAGG.
"JOSEPH UDALL.
"JULIUS WETZLER.
"H. M. MORITZ.
"C. H. BROWN.
"GILBERT E. GREER."

The complaint concludes with the allegation that the note has not been paid, except for certain portions thereof and a demand for judgment against defendant and the guarantors for the amount still due, for an order restraining Greer from disposing of any of the assets of defendant, and that a receiver be appointed to take possession of such assets, and for general relief.

Defendant and guarantors, after filing various demurrers and motions, answered, admitting the execution of the note and guaranty in question, but alleged that they were made in part fulfillment of a certain written agreement entered into between the Bank of Winslow, the Arizona State Bank, and defendant herein on March 20, 1924; that the consideration for the note and guaranty had totally failed, and the other usual formal allegations and denials pertinent to such a defense. A reply was interposed, and defendant and the guarantors then moved for judgment on the pleadings, which motion was denied. The matter was heard before the court sitting without a jury, and findings of fact and conclusions of law duly filed, upon which judgment was entered in favor of plaintiff against defendant and the guarantors for the amount then due on the note, for the appoint-

ment of a receiver for defendant, and that its assets be applied upon the judgment. From the judgment this appeal has been taken.

There are some six assignments of error which we will consider in their logical, rather than numerical, order. The second is that the court erred in denying the general demurrer to plaintiff's complaint. We do not discuss this at length, as we are satisfied the complaint upon its face shows a cause of action against both defendant and the guarantors.

The third is that the court erred in denying the special demurrer of defendant. This demurrer was apparently based on the ground that plaintiff sought to establish a lien upon certain promissory notes claimed to be collateral to the note sued on, when possession of such notes had never been actually transferred to the holder of the principal note, but had always remained in the defendant. The basis of this last demurrer is that no lien can be had upon property alleged to have been pledged as collateral, unless it has first been actually deposited with the pledgee. While a common-law lien requires the actual or constructive possession of property by the pledgee, an equitable lien may exist upon property which has not been in his possession. 37 C. J. 326. We think, therefore, the special demurrer was properly overruled.

The first assignment is that the motion of defendant for judgment on the pleadings should have been granted. After the filing of the reply the pleadings in substance were as follows: The complaint set up a promissory note, a guaranty thereof, and an alleged pledge of collateral to secure the payment of the note. The answer admitted the execution of the note and guaranty, but alleged they were given in accordance with the terms of a certain contract, and that when such contract was construed as a whole, taken with other facts set up by the answer, it appeared the

consideration for the note and guaranty had totally failed. The reply denied that the note and guaranty were in any way dependent on the agreement pleaded in the answer, or that the consideration had failed either in whole or in part. This certainly raised two questions of fact: First, were the note and guaranty in question given under the terms of the agreement of March 20th; and, second, if so, had the consideration for them totally failed? The court properly denied the motion for judgment on the pleadings.

The sixth assignment is that the court erred in refusing to make written findings of fact on the issues presented by the defendant's answer. The motion as filed was as follows: "The above named defendants hereby request that the above entitled court make written findings of fact in the above entitled and numbered cause, stating the facts found by the court and the conclusions of law separately." Findings and conclusions were made and filed, which support the judgment, and it does not appear that defendant or the guarantors asked that they be made any more explicit than they were. There is no merit in the sixth assignment.

The fifth assignment is that the judgment entered does not conform to the issues raised by the pleadings. We need not consider this further than to say it appears to us it was in strict conformity with the issues as raised.

This brings us to the sole remaining assignment, to the effect that the judgment entered is not supported by the law and the evidence. This is the real issue in the appeal, and we shall consider it at some length. It appears from the undisputed evidence that before March 20, 1924, defendant, the Bank of Winslow, and the Arizona State Bank were separate corporations, engaged in the banking business, defendant at Holbrook, and the other two at Winslow, Arizona. It also appears that the financial situation of all of

these three banks was not very good, and the various officers and directors believed that by a consolidation this situation might be improved. They therefore entered into a written agreement on the date mentioned, which was duly submitted to and approved by· the state superintendent of banks. This agreement provided, in substance, as follows: That the three banks should be consolidated under a new name as one corporation; that the capital stock of the new corporation should be subscribed by them in certain proportions; that each of the banks should transfer to the new corporation all of its assets of every description, subject to all existing liabilities, with the following exceptions: The Arizona State Bank was to retain $45,000, the Bank of Winslow $85,000, and defendant $85,000 in bills receivable. In each case the paper reserved was to be chosen from the assets of the bank making the reservation, by a committee of three, selected one member by each bank. The paper so selected was to be held for certain purposes and in a certain manner not necessary for· us to consider. The agreement further contained the following clause: "It is further agreed that said committee shall in its discretion select such other paper as in its judgment is of doubtful value and the Board of Directors of each of the parties to this agreement respectively, shall, by a legal instrument properly executed by them in their individual capacity, guarantee the value of the additional paper so selected from their respective banks and shall guarantee the ultimate payment of such additional paper so selected."

For some reason this agreement was never carried into effect so far as the establishment of a new banking corporation was concerned, but on May 12th the Bank of Winslow took over the assets of the Arizona State Bank and assumed at least part of its liabilities; the latter bank then ceasing banking operations. On May 14th the note and guaranty sued upon were ex-

ecuted by defendant, and the Bank of Winslow assumed the payment of defendant's deposit liabilities, and in fact later did pay a large portion thereof. There is a dispute in the testimony as to the circumstances under which this was done. The witnesses for defendant and the guarantors claimed that the whole transaction was subject to the agreement of March 20th. T. M. Quebedeaux, on the other hand, who represented the Bank of Winslow in the transaction, testified in substance as follows:

"This bank, the bank of Winslow and the M. & S. G. Bank were not consolidated in May, 1924, but the deposit liabilities were assumed by the Bank of Winslow and were thrown together; also assets were assigned in amount to offset the liabilities assumed. . . .

"The Bank of Winslow did not to my knowledge, after my connection with it and after the merger, make any elimination of its bills receivable, nor prior to the merger, to my knowledge.

"The Directors of the Bank of Winslow never, to my knowledge, made any guarantee of any doubtful paper in that bank prior to or contemporaneous with the merger, which was designated doubtful by a committee composed of members of each of the three Banks.

"The Directors of the Arizona State Bank never guaranteed any paper. . . .

"We told the M. & S. G. Bank we would not assume these deposits until this guaranty was made. Mr. Moritz was Vice President or cashier of the Bank, and he is the man I talked to. I didn't hear the conversation he had with these people. He was the active man of the Bank. I had this guaranty drawn myself, and it was prepared by Mr. C. B. Wilson.

"Q. At the time this guaranty was given to the Bank of Winslow, was it given to the Bank of Winslow in consideration of that Bank giving any guaranty?

"By Mr. Spaulding: Object as calling for conclusion of the witness, and improper cross-examination.

"By the Court: Objection overruled, witness may answer.

"By the Witness: A. The guaranty expresses the entire consideration, and no other consideration, except to guarantee that note, in consideration of which we had assumed their deposits. I cannot conceive of any other consideration. I was acting, not as a member of a committee, but for the Bank of Winslow. At that time the Bank of Winslow had already assumed the liabilities of the Arizona State Bank, two days before. . . .

"I only considered the guaranty of the M. & S. G. Bank was to make good the liabilities we were assuming from them, and I did consider that it made them good. We received something of value, in my opinion, when we received the guaranty of the Board of Directors of the M. & S. G. Bank."

B. B. Neel also testified as follows:

"Q. Have you knowledge of the giving of a certain promissory note by the M. & S. G. Bank to the Bank of Winslow of date May 14,—of some $274,000—odd dollars? A. Yes.

"Q. Do you know what that note was given for? A. Difference between the acceptable assets from the M. & S. G. Bank and the liability that was assumed by the Bank of Winslow.

"Q. Any guaranty accompanying that note? A. There was.

"Q. Do you remember the guarantors? A. Directors of the M. & S. G. Bank.

"Q. Do you know whether this note was given to the Bank of Winslow in consideration that the Bank would take up and pay the liabilities of the Merchants & Stockgrowers Bank? . . .

"By the Witness: A. I understood the consideration to be because the Bank of Winslow was assuming the liabilities."

The trial court found that the note and guaranty in question were given for a good and sufficient consideration, and rendered judgment thereon. In order to support such finding, it must have believed that the

guaranty was independent of the agreement of March 20th. Does the evidence support such a finding?

The agreement of March 20th provided for (a) setting aside to each bank a certain amount of paper, selected by committee chosen in a specified manner, (b) a transfer to the new corporation of all other property, and (c) a guaranty by the directors of each bank of all transferred paper found by the committee to be of doubtful value. The new bank was never organized. On May 14th representatives of defendant and the Bank of Winslow examined the paper of defendant, and the latter gave the note in question in an amount equal to the excess of the liabilities assumed over the admittedly good assets transferred, and the guaranty was executed. Neel and Quebedeaux testified as above that the sole consideration for the guaranty was the assumption of defendant's deposit liabilities. Three of the guarantors were equally positive that part, at least, of the consideration was the promise that a similar guaranty would be made immediately by the directors of the other banks. It appears that the Bank of Winslow took over the affairs of the Arizona State Bank May 12th, and those of defendant May 14th, paying their deposit liabilities as demand was made therefor until October 3d. Apparently after May 14th no effort was made by the guarantors to get the directors of the Arizona State Bank or the Bank of Winslow to select and guarantee their doubtful paper, though the guarantors must have known it was not done, since defendant's representative was to participate in any such selection.

We are of the opinion that this is sufficient to support a conclusion by the court that the guaranty made on May 14th was not made on condition that the directors of the Bank of Winslow and the Arizona State Bank should make a corresponding guaranty of

paper in their banks in accordance with the agreement of March 20th, but, on the contrary, was an unconditional guaranty of the note in question in consideration of the Bank of Winslow assuming the deposit liabilities of defendant. If this be true, it is obvious the consideration for the note and guaranty had not failed. We must presume this necessary conclusion was reached by the court, and, since there is evidence to sustain it, we may not quesion it. *Rosenburg et al.* v. *Capital C. S. etc. Co.,* 28 Ariz. 505, 238 Pac. 330; *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *First Baptist Church* v. *Conner,* 30 Ariz. 234, 245 Pac. 932; *Arizona Com. Co.* v. *Iron Cap C. Co.,* 29 Ariz. 23, 239 Pac. 290.

The judgment of the trial court is hereby affirmed.

ROSS, C. J., and McALISTER, J., concur.