ADOLPH WITTEMANN, Respondent, *v.* AUSTIN L. SANDS et al., Appellants.

Negotiable instruments — liability of irregular indorsers of promissory notes — order in which indorsers are liable — presumptions — when agreement that indorser is not liable to payee may be proved — when evidence that indorsements were made to enable corporation to borrow money, and not for the benefit of the payee, should be admitted — erroneous exclusion of evidence.

1. Under section 114 of the Negotiable Instruments Law (Cons. Laws, ch. 38) an irregular indorsee of a promissory note is now presumed to be liable to the payee thereof and to all subsequent parties. The statute does not create an absolute liability by the change from the common-law rule, it merely shifts the presumption. As before the statute, the payee was permitted to show the exact transaction and an agreement upon the part of the indorser to become liable to him, so now under the statute the indorser may show by parol evidence that he is not liable to the payee by reason of an agreement to the contrary.

2. By section 118 of the statute (Neg. Inst. Law) indorsers are liable *prima facie* in the order in which they indorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise. Section 114 and section 118 read together indicate that subdivision 1 of section 114 makes the indorser liable to the payee in the absence of an agreement to a different arrangement.

3. This is an action upon several promissory notes made by a manufacturing corporation to the order of the plaintiff and indorsed by the defendants. The plaintiff is the president of the corporation and the owner of most of the common stock thereof and the defendants are also stockholders, each owning only a small part of said stock. In order to raise funds for carrying on its business, the plaintiff and several others, including the defendants, all being stockholders of the corporation, entered into an agreement to execute and indorse a note for the purpose of having the same discounted by the plaintiff. It was also further agreed that the plaintiff and the indorsers, among whom were the defendants, should become jointly liable on said note and sureties for the corporation. The plaintiff appears on these notes as the payee and the first indorser, but this, however, is not a correct representation of the order or sequence of the indorse-

ments. In fact, the names of the defendants and the other indorsers were on the notes when they were given to plaintiff and when indorsed by him. These facts set forth in the answer constitute a good defense available to the parties, and the alleged agreement that the plaintiff and the defendants were to be jointly liable upon the notes could be proved by circumstances as well as by direct testimony. Evidence having been produced which proved or tended to prove these allegations, it was error for the court to direct a verdict for plaintiff; under the circumstances there was raised a question of fact which should have been submitted to the jury.

4. Thereafter the notes were indorsed by defendants, the indorsements being procured by plaintiff's son who was said by plaintiff to handle these affairs for him. Upon the trial defendants attempted to show what was said by plaintiff's son at the time he procured the indorsements. This was erroneously excluded by the trial court. The money received from the notes had gone into the funds of the corporation and been used by it. Defendants received no benefit except as stockholders owning a small part of the stock while plaintiff's holdings were tenfold larger. The question to be determined was whether defendants indorsed these notes, as accommodation indorsers, for the benefit of the plaintiff so that he might receive the money or the credit without responsibility, or whether the notes were indorsed for the benefit of the corporation and that plaintiff, as president thereof, was to share jointly in the liabilities as co-adventurer with the other stockholders. The plaintiff is now the holder of the notes and under all of the circumstances and the relationship of the parties to the corporation and to the defendants it was a question for the jury to determine whether or not plaintiff's son was acting for plaintiff in procuring the indorsements and authorized to make the agreement alleged.

*Wittemann* v. *Sands,* 207 App. Div. 856, reversed.

(Argued June 6, 1924; decided July 5, 1924.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 7, 1923, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Perry D. Trafford, Albert Falck* and *Millard H. Ellison* for appellants. In cases of regular indorsements the con-

tract of the parties is definite and is not the subject of parol evidence, but in cases of irregular indorsements it has always been considered that the meaning of the parties is ambiguous and parol evidence has always been received to show their real intention. (*Hodgens* v. *Jennings,* 148 App. Div. 879; *Coulter* v. *Richmond,* 59 N. Y. 478; *Witherow* v. *Slayback,* 158 N. Y. 649.) Before the adoption of the Negotiable Instruments Law, it was presumed that irregular indorsers owed no liability to other parties to a note, although the contrary could be shown by parol evidence. By the Negotiable Instruments Law this presumption has been changed, and it is now presumed, in the absence of evidence, that such indorsers are liable to the payee; but now, as always before, the real intention of the parties to the instrument may be shown. (*Kohn* v. *Cons. B. & E. Co.,* 30 Misc. Rep. 725; *Haddock, Blanchard & Co.* v. *Haddock,* 192 N. Y. 499; *Franklin* v. *Kidd,* 219 N. Y. 409.) Where the evidence, as in this case, shows that all the parties to the note were engaged in a common enterprise, that the money which was raised upon the note was for the furtherance of that enterprise and was not for the direct personal benefit of any of the parties, there is a presumption that the parties thus interested intended to become jointly liable on the note; or, at least, under such circumstances, the question whether they shall be held jointly liable should be submitted to the jury. (*George* v. *Bacon,* 138 App. Div. 208; *Reeder* v. *Union Trust Co.,* 26 Penn. Dist. R. 833; *Strasburger* v. *Strasburger & Co., Inc.,* 167 App. Div. 198; *Weeks* v. *Parsons,* 176 Mass. 570; *Trego* v. *Cunningham Estate,* 267 Ill. 367; *Lee* v. *Boykin,* 114 S. C. 480; *Plumley* v. *Bank of Hinton,* 76 W. Va. 635.) Although it was unnecessary to prove an express contract to share the liability upon these notes by offering proof of conversations between the parties, yet defendants were entitled to do so; and, having offered evidence from which under the peculiar circumstances of this

case, the jury might have found that Paul Wittemann was the agent of his father, they should have been allowed to prove the statements of Paul Wittemann to the defendants when he asked them to indorse the notes. (Mechem on Agency [2d ed.], §§ 242, 261, 296, 299; *Matter of Zinke*, 90 Hun, 127; *Dickinson* v. *Salmon*, 36 Misc. Rep. 169.)

*William H. Clark* and *Loren N. Wood* for respondent. Parol evidence is not admissible under these circumstances to vary the terms of the written instruments. (*Witherow* v. *Slayback*, 158 N. Y. 649; *Kohn* v. *Cons. B. & E. Co.*, 30 Misc. Rep. 725; *Easterly* v. *Barber*, 66 N. Y. 433; *Franklin* v. *Kidd*, 219 N. Y. 409; *Hodgens* v. *Jennings*, 148 App. Div. 879; *Bird* v. *Kay*, 40 App. Div. 533; *F. R. Bank* v. *Norton*, 186 N. Y. 484; *Nat. Citizens Bank* v. *Toplitz*, 81 App. Div. 593; *Spencer* v. *Allerton*, 60 Conn. 410; *Baumeister* v. *Kuntz*, 53 Fla. 340.)

CRANE, J.　The plaintiff has sued the defendant Sands upon six promissory notes made by the Wittemann Aircraft Corporation to the order of the plaintiff, and in a separate action he has sued the defendant Spencer on five of the same notes. The cases were tried together resulting in the direction of a verdict in favor of the plaintiff and against the defendant in each case. By order of the Supreme Court entered after the rendition of these verdicts, the actions were consolidated as to the five causes of action in which it was alleged that the defendants had made and executed similar notes and a joint judgment was entered against both Spencer and Sands for the amount of the five notes with interest and costs. As to the sixth note constituting the third cause of action in the suit against Sands, it remained for the entry of a separate judgment against him and is not a part of this record on appeal. This joint judgment entered against these defendants was unanimously

affirmed by the Appellate Division, the appeal being brought here by permission of this court.

The answer of the defendants set up as a defense an agreement made with the plaintiff that he with the defendants was to be jointly liable upon the notes. It was alleged that the Wittemann Aircraft Corporation was organized under the laws of the State of Delaware having a total issue of 100,000 shares of common stock of no par value, and of 50,000 shares of preferred stock at par value of $100 per share. The defendants further set forth that out of 14,600 shares of common stock issued, the plaintiff owned 10,313 shares thereof, the defendant Spencer 874 shares, and the defendant Sands 1,123 shares. During the years of 1920 and 1921 the Wittemann Aircraft Corporation was in financial difficulty and in need of funds. The allegations of the answer then continue as follows:

" That in order to raise the necessary funds for the purpose of carrying on the business of the Wittemann Aircraft Corporation, the plaintiff, Adolph Wittemann, the defendant, Austin L. Sands, one J. J. O'Leary, one Louis H. Giele, one Lorillard Spencer, one Charles Wittemann, one Paul W. Wittemann and one Walter Wittemann, all being stockholders of said corporation, entered into an agreement wherein and whereby it was agreed to execute and endorse a note (the renewal of which is set forth in this cause of action) for the purpose of having the same discounted by the plaintiff.

" It was further agreed that the plaintiff, Adolph Wittemann, the defendant, Austin L. Sands, the said J. J. O'Leary, Louis H. Giele, Lorillard Spencer, Charles Wittemann, Paul W. Wittemann and Walter Wittemann should become jointly liable on said note and sureties for the corporation."

These allegations were held to constitute a good defense in this case on a previous appeal to the Appellate Division. (*Wittemann* v. *Spencer; Wittemann* v. *Sands*, 205 App. Div. 855.)

One of these notes may be taken as an illustration of the five and is as follows:

" $7250.00              NEW YORK, *December* 19*th,* 1921

" Two months after date we promise to pay to the order of ADOLPH WITTEMANN.................Seventy Two Hundred Fifty and 00/000......Dollars.   Payable at Lawyers Title & Trust Company, 44 Court St., Brooklyn, N. Y.

" Value received with Interest.

" WITTEMANN AIRCRAFT CORPORATION.

" PAUL W. WITTEMANN, *Treas.*

" AUSTIN L. SANDS, *Asst. Treas.*

" No..........       Due Feb. 19/20.

" LAWYERS TITLE & TRUST COMPANY (STAMP) "

(On Back)

" ADOLPH WITTEMANN

" PAUL W. WITTEMANN

" C. R. WITTEMANN

" AUSTIN L. SANDS

" JOHN J. O'LEARY

" LOUIS H. GIELE

" LORILLARD SPENCER

" ($1.46 Doc. Stamps Cancelled) "

Adolph Wittemann, the plaintiff, appears as the payee and as the first indorser.   This, however, is not a correct representation of the order or sequence of the indorsements, as Adolph Wittemann was in fact the last indorser. The names of the other indorsers including Sands and Spencer were on this note and the other notes when they were given to Adolph Wittemann and when indorsed by him.   Four of these notes were put in the bank for collection about the time of maturity, the other was discounted and the proceeds placed to the credit of the plaintiff.

The trial court was apparently of the opinion that defendants had failed to prove the agreement which was alleged in the answer.   The respondent goes further and

insists upon this appeal that under section 114 of the Negotiable Instruments Law (Cons. Laws, ch. 38) such an agreement could not be proved as the liability of Sands and Spencer was absolute not admitting of parol evidence to vary it.

It is conceded that the indorsements are irregular in that they were not placed upon the notes in the order in which they appear above. Sands and Spencer had indorsed the notes prior to the delivery to the payee. Section 114 of the Negotiable Instruments Law reads as follows:

" Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:

" 1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.

" 2. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

" 3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

Prior to the enactment of the Negotiable Instruments Law of 1897 there was a presumption that one who had indorsed a promissory note in blank before delivery to the payee intended to become liable simply as second indorser and was not liable to the payee. This presumption, however, could be rebutted by parol proof that the indorsement was made to give the maker credit with the payee. (*Coulter* v. *Richmond*, 59 N. Y. 478; *Witherow* v. *Slayback*, 158 N. Y. 649.) Section 114 above quoted changed this presumption and an irregular indorser is now presumed to be liable in accordance with the express language of subdivision 1 of the section. The presumption is no longer in favor of the indorser but in behalf of the payee. The statute does not create an

absolute liability by the change, it merely shifts the presumption. As before the statute the payee was permitted to show the exact transaction and an agreement upon the part of the indorser to become liable to him, so now under the statute the indorser may show by parol evidence that he is not liable to the payee by reason of an agreement to the contrary. (*Haddock, Blanchard & Co.* v. *Haddock,* 192 N. Y. 499; *Franklin* v. *Kidd,* 219 N. Y. 409.) By section 118 of the Negotiable Instruments Law indorsers are liable *prima facie* in the order in which they indorse but evidence is admissible to show that as between or among themselves they have agreed otherwise. The plaintiff was an indorser as appears by the back of the note, and if he were not also payee this statute would be conclusive as to the right of these defendants to prove as against him the alleged agreement to be jointly liable. The fact that he was payee as well as indorser cannot make such a radical difference as to create an absolute liability against the other indorsers which cannot be modified by agreement. Section 114 and section 118 read together indicate that subdivision 1 of section 114 makes the indorser liable to the payee in the absence of an agreement to a different arrangement.

The defense set forth in the answers was, therefore, available to the parties and it now remains to consider whether the trial justice should have directed a verdict in favor of the plaintiff. The alleged agreement that the plaintiff and these defendants were to be jointly liable upon these notes could be proved by circumstantial as well as by direct testimony. In the absence of statute to the contrary (such as section 1041 of the Penal Law) any fact may be proved by circumstantial evidence. The appellants insist that the circumstances as developed upon the trial of this case raised an issue of fact which should have been submitted to the jury.

The Wittemann Aircraft Corporation had succeeded to the Wittemann Lewis Corporation February 1, 1921.

At that time one of the predecessors of the notes in question was in existence but not indorsed by Spencer and Sands. The note was renewed from time to time and the indorsements · came upon the renewals. The other notes apparently were also renewals of previous notes made by the Wittemann Aircraft Corporation. At the time when these defendants put their names to the notes the officers of the corporation were Charles R. Wittemann, president, Walter Wittemann, vice-president, Paul W. Wittemann, secretary and treasurer, and Austin L. Sands, the defendant, assistant treasurer. The Wittemanns were sons of the plaintiff. These officers and the defendant Spencer were on the board of directors. Spencer and Sands had loaned the corporation money and had indorsed a note for twenty-five or thirty thousand dollars not involved here. Out of the 12,000 shares of common stock of the Wittemann Aircraft Corporation issued, Adolph Wittemann owned 10,000 shares, while Sands had 1,123 shares, and Spencer 874. Both companies were in need of funds. In the summer of 1920 Adolph Wittemann, the plaintiff in this case, asked Sands, the defendant, whether he would indorse a note for him which his son Paul had given to him to discount in a Brooklyn bank for the payroll. The plaintiff then stated that it would be easier for him to handle the note at the bank if he, Sands, indorsed it. This note the defendant refused to indorse. Later in August of 1920 a meeting took place at the office of a Mr. Mingle in the Woolworth Building regarding the financial difficulties of the Aircraft Corporation. Sands testified:

" Mr. Mingle had made an effort to finance the company, which was in financial difficulties — and in the course of the conversation Mr. Mingle asked Mr. Adolph Wittemann whether he approved of this proposition of his taking over the company and advancing $180,000, and Mr. Adolph Wittemann said, ' My son Paul handles all these affairs for me.' "

1924.]                Opinion, per CRANE, J.        [238 N. Y. 434]

Paul Wittemann was present. It was after this meeting that the defendants became associated with the company. Up to this time the defendants had not indorsed any of the notes in question. Thereafter Paul Wittemann asked the defendant Sands at the plant in New Jersey to indorse notes. The testimony is:

" Mr. Paul Wittemann said that his father had these notes, but that the company needed funds, and it would be difficult for him to handle these notes without some outside strength on the notes, and, therefore, he asked whether all the directors would not lend their signature to Mr. Adolph Wittemann to handle these notes, so as to make it easier for him to discount them in the bank.

" Q. And what was the purpose of getting this money, if anything was said about that? A. It was for payrolls of the company. Payrolls and some small merchandise accounts."

In December of 1921 and January and February of 1922 the notes in question were indorsed by Spencer and Sands. The indorsements were procured by the plaintiff's son Paul Wittemann. What was said by Paul Wittemann to these defendants at the time he procured the indorsements was excluded. The attempt of the defendants to prove the circumstances under which they had made the indorsements appears by the following questions and answers:

" Q. Will you state when you signed these notes, who presented them to you? A. Mr. Paul Wittemann.

" Q. Was he an officer of the Wittemann Aircraft Corporation? A. He was.

" Q. What office did he hold? A. He held the office of secretary and treasurer.

" * * * These notes were renewal notes prepared by myself after I was elected treasurer of the company and after Mr. Paul Wittemann had resigned.

" * * * Q. Now, will you state then, during that time, when Mr. Paul Wittemann presented a note to you

for indorsement as nearly as you can give us the times and the conversations he had with you? "

After this question eleven pages of the record are taken up with the discussion of its competency by court and counsel resulting in the following ruling:

" The Court: I will state for your benefit that I am sustaining the objection on the basis of failure to establish up to this time authority in Paul to act for Adolph.

" Mr. Ellison: Exception."

We are of the opinion that on the facts as developed and the inferences to be drawn from them taken most favorably for the defendants a question of fact arose which should have been submitted to the jury. We are also of the opinion that the inducements if any stated by Paul Wittemann which led these defendants into indorsing the notes should have been received in evidence. Adolph Wittemann was more deeply interested financially in the maker of these notes than anybody else. He owned ten times more stock than either of the defendants. His sons were officers of the corporation. It is natural to suppose that he and his family desired to keep it alive by meeting the payroll of its employees and paying small merchandise accounts. He personally had asked the defendant Sands to indorse notes for this purpose. He was present when the financial condition of the corporation was being discussed and reorganization proposed. He then referred to his son Paul, the secretary and treasurer, saying that he looked after all these affairs for him. What did this mean? Did he refer to the mere reorganization or did he refer to the finances generally of the Aircraft Company? These were questions for the jury to determine and inferences for the jury to draw. The money received upon these notes at some time had gone into the funds of the corporation, and had been used by it. The defendants received no benefit except as stockholders. Whatever benefit they did receive was shared by the plaintiff tenfold so far as the

record before us discloses. What is the reasonable inference to be drawn from these facts? Is it that they had indorsed these notes for the personal benefit of Adolph Wittemann so that he was to receive either the money or the credit without responsibility, or is it sensible to suppose that the notes were indorsed for the benefit of the Wittemann Aircraft Corporation and that Adolph Wittemann was to share jointly in the liabilities as co-adventurer with the other stockholding indorsers? We think there was sufficient here in these facts to warrant a submission of the question to the jury. (*George* v. *Bacon*, 138 App. Div. 208; *Strasburger* v. *Strasburger & Co., Inc.*, 167 App. Div. 198; *Weeks* v. *Parsons*, 176 Mass. 570; *Trego* v. *Estate of Cunningham*, 267 Ill. 367; *Lee* v. *Boykin*, 114 S. C. 480; *Plumley* v. *First Nat. Bank of Hinton*, 76 W. Va. 635.)

Paul Wittemann having procured the indorsements, the defendants should have been permitted to show what he said at the time. He procured the notes for the plaintiff. The plaintiff is now the holder of the notes. In view of the relationship of the parties to the corporation and to these defendants and in the light of the previous transactions and conversations heretofore detailed it was in our judgment a question for the jury to determine whether or not Paul was acting for his father in procuring the indorsements and authorized to make the agreement alleged. The trial justice was in error in holding that there was no evidence whatever tending to show the authority of Paul to act for his father in the matter.

A verdict should not have been directed for the plaintiff, and the judgment below based thereon must be reversed.

The judgments appealed from should be reversed, new trial granted, costs to abide the event.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.