KIMBALL STATE BANK, Appellant, v. KIMBALL ROLLER MILLS, et al, Respondents.

(226 N. W. 757.)

(File No. 6573. Opinion filed September 20, 1929.)

*Heck & Thorson,* of Kimball, for Appellant.

*Fellows, Fellows & Whiting,* of Mitchell, for Respondents.

MISER, C. On April 24, 1922, Kimball Roller Mills executed a negotiable promissory note for $4,000 to the appellant, Kimball

State Bank. On May 4, 1922, it executed like notes for $3,000 and $2,000 to the same payee. These notes not being paid at maturity, appellant brought suit thereon, setting forth copies thereof, alleging their execution and nonpayment. The complaint also alleged that, at the time of the making of each of said notes and prior to delivery to the bank, defendants Wright, Beebe, Dyer, and Novotny, "each for himself, indorsed said note for the purpose of inducing said bank to accept the same and extend credit thereon, and with the intent to charge themselves as first indorsers thereon; that thereupon the said defendant, Kimball Roller Mills, delivered said note so indorsed to the Kimball State Bank, and the said bank, upon the credit of said indorsements, accepted said note and gave value therefor."

At the trial, verdict was directed against defendants Wright and Dyer, neither of whom appeals therefrom. Motion to direct a verdict against defendants Beebe and Novotny was denied, and the jury returned a verdict in their favor. At a separate trial theretofore, verdict had been returned against the defendant Kimball Roller Mills. This appeal is from the judgment in favor of defendants Beebe and Novotny and from the order denying motion for new trial.

The answer of defendants Beebe and Novotny admitted the execution of the notes, denied the allegations in the complaint above quoted, and for a separate affirmative defense alleged that the bank accepted the notes without their indorsement and loaned money thereon on the sole credit of the Kimball Roller Mills, and that, after the bank accepted the notes, its officers requested Beebe and Novotny to indorse them to enable the bank to rediscount the notes, stating that Beebe and Novotny would not be held liable thereon, and that the indorsements were thereupon made without consideration and solely for the accommodation of the bank.

██ Upon these pleadings, defendants, over appellant's objection, were given the opening and closing of the case. We are of the opinion that this was error. Section 1768, R. C. 1919, is in part as follows: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules: 1: If the instrument is payable to the order of a third person he is liable to the payee and to all subsequent parties. * * * 3. If he

signs for the accommodation of the payee, he is liable to all parties subsequent to the payee." This section is identical with section 64, Uniform Negotiable Instruments Law. In Thompson v. Curry, 79 W. Va. 771, 91 S. E. 801, in an opinion construing this and the preceding section, it is said that "the uncertain status of an irregular or anomalous indorser at the common law, as interpreted by the courts of the different jurisdictions," was one of the chief inducements for the adoption of the Uniform Act. Our field of inquiry should be limited to decisions since its adoption.

The complaint alleges liability under subdivision 1 of this section. On the other hand, the separate answers of respondents, while alleging nonliability by reason of signing for appellant's accommodation, which would otherwise bring their defense under subdivision 3 of the section, also alleges that respondents did not indorse the note before delivery as alleged in the complaint, but after appellant had accepted the notes and loaned money thereon on the sole credit of Kimball Roller Mills. By denying that they indorsed before delivery, respondents took themselves without the terms of subdivision 3 of section 1768; for one not otherwise a party who places his signature on a note *after* delivery is not an indorser within this section. Briscol v. American Southern Trust Co., 176 Ark. 401, 4 S. W. (2d) 912, Brannan's Neg. Inst. Law (4th Ed.) 586. But appellant's complaint alleged liability within section 1768. It not merely alleged execution of the note by the maker, but also alleged indorsement *before* delivery by respondents "for the purpose of inducing said bank to accept the same * * * and the said bank, upon the credit of said indorsements accepted said note and gave value therefor."

Under this state of the pleadings, appellant was entitled to open and close. In Brannan's Neg. Inst. Law (4th Ed.) 586, it is said: "The payee in order to hold an indorser under this section must allege and prove that the indorsement was made before delivery, and the burden of proof to establish the fact is upon him. Bender v. Bahr Trucking Co., 144 App. Div. 472, 129 N. Y. S. 737."

In William Segar, Inc., v. Realty Corp., 127 Misc. Rep. 805, 217 N. Y. S. 471, 473, speaking of the liability of an irregular indorser, the court said: "His liability is prescribed in Section 114 of the Negotiable Instruments Law. [Sec. 114 of the New York

Negotiable Instruments Law is identical with our Sec. 1768 and with Sec. 64 N. I. L.] Prior to the enactment of that law, such an indorser was not liable to the payee, in the absence of proof that such was the intention of the parties. Haddock, Blanchard & Co. v. Haddock, 192 N. Y. 499, 507, 85 N. E. 682, 19 L. R. A. (N. S.) 136. Since that enactment, and by virtue of its provisions, an irregular indorser is liable to the payee unless he proves there was an agreement to the contrary. Wittemann v. Sands, 238 N. Y. 434, 440, 144 N. E. 671, 37 A. L. R. 1216. But, as section 114 provides that such an indorser is liable to the payee and all subsequent parties only if he placed his signature upon the note before delivery, it is necessary for a plaintiff to prove that such an indorsement was so made. Bender v. Bahr Trucking Co., 144 App. Div. 742, 744, 129 N. Y. S. 737."

Had respondents conceded that the notes were indorsed before delivery and limited their defense to that of signing for the accommodation of the payee appellant, the pleadings would have consisted of a complaint based on the first subdivision of section 1768 and an answer based on the third subdivision of that section. But the answer did not so concede, nor did it so limit the defense. Appellant was therefore not relieved of its burden of proof, nor should there have been taken from it the corresponding right to open and close the case. The denial of that right was error; whether prejudicial or not we do not decide, for a new trial must be had by reason of other errors clearly prejudicial.

Respondents not only alleged that they signed after delivery, and solely for the purpose of enabling appellant to rediscount the notes, and that they received no consideration whatever for the indorsements; but they also alleged that their indorsements were made on the assurance of appellant's officers that respondents would not be held personally liable thereon. Much evidence in support of these allegations was received over appellant's objection, and the rulings of the trial court furnish the basis of many of the 96 assignments of error herein. Althought the notes in suit were given in 1922, respondents were permitted to introduce in evidence a resolution of the stockholders of Kimball Roller Mills, dated September 11, 1919, assigning to appellant bank their stock, "the same to be held as collateral security for the money advanced from time to time for the operation of the mill"; also an agreement

dated November 13, 1918, wherein respondents Novotny and Beebe and defendant Wright guaranteed the payment at maturity of all notes of the milling company then or thereafter held by appellant. bank. Respondents thereupon introduced evidence that, at the time of the adoption of the resolution by the stockholders to pledge their stock on September 11, 1919, McClenahan, president of appellant, bank, told respondents that the deposit of the mill stock would exempt respondents from personal liability, and that he would see that they got back the guaranty of November 13, 1918; that when Novotny delivered his mill stock to the bank pursuant to the resolution of September 11, 1919, he demanded back and received the guaranty agreement of November 13, 1918. Whatever the purpose of this testimony relating to transactions occurring three and four years prior to the execution of the notes sued on, it had a tendency to negative an inference that Novotny, secretary of the Kimball Roller Mills, had actually signed, not for the accommodation of the mill, as appellant contends, but for the accommodation of the bank. It tended to show that, however freely and fully Novotny, Beebe and Wright, all stockholders in the mill, had guaranteed the notes of the mill prior to September 11, 1919, they had thereafter scrupulously refused to bind themselves personally. When, however, appellant attempted to combat this evidence by showing that the very notes sued on were given in renewal of notes which were also indorsed by respondents, respondents' objections were sustained.

Objections were sustained to such questions asked Novotny on cross-examination and also when he had been called as an adverse witness under the statute. Objections were sustained to such questions asked of appellant's cashier, who received the notes in suit from Novotny. No useful purpose would be served in discussing these several rulings. The abstract discloses that, after appellant's cashier had testified that he had mailed to Wright, president of the mill, the blank $4,000 note with a request to sign and send to Novotny to be signed by him and returned to the bank, and had testified that when Novotny brought in the note it was already signed by Kimball Roller Mills by O. H. Wright, president, and indorsed by Wright and Beebe, he further testified that, at that time, Novotny and Dyer, who was at the bank, indorsed the note, and that he (the cashier) thereupon delivered to Novotny the

prior note of the roller mills also indorsed by Wright, Beebe, Novotny, and Dyer. This further testimony was stricken out as stating the contents of a written instrument not produced in court. Thereupon, appellant showed that, having returned the note to Novotny, it could not produce it. The cashier was then asked whether the note returned to Novotny had any indorsements thereon. To this question, objections were sustained. Appellant then offered to prove by the cashier that the note so renewed by the $4,000 note in suit was indorsed by Wright, Beebe, Novotny, and Dyer, and that the same was true of the notes for which the $3,000 and the $2,000 notes were renewals. This offer of proof was objected to by respondents and leave to prove denied.

 It is true that defendant Wright, called as a witness for the plaintiff, testified corroborating the testimony of appellant's cashier as to receiving the unsigned notes by mail from the bank, executing them as president of the mill, indorsing and sending them to Novotny. Wright also testified that all these notes were renewals of prior notes. But all evidence that the notes so renewed were indorsed like the notes renewing them was excluded. This was prejudicial error. Such evidence tended to disprove the defense of no consideration. Downey v. O'Keefe, 26 R. I. 571, 59 A. 929; 8 C. J. 217. It also tended to contradict respondent's evidence that, after September 11, 1919, they had avoided personal liability for the debts of the mill of which they were stockholders. The bank produced in court an agreement dated November 12, 1918, over the admitted signatures of Wright, Novotny, and Beebe. McClenehan testified that it was the only such agreement received by the bank, and that Novotny had never demanded it nor received it back when he deposited his stock as collateral. Novotny produced an identical agreement but dated November 13, 1918, and testified as hereinbefore stated. This presented a sharp conflict. Were these notes indorsed without consideration? Had respondents indorsed the notes that were canceled by the renewals? It cannot be said that the exclusion of this additional evidence of personal liability as indorsers on the notes which were renewed was without prejudice.

Many other important questions are raised by this appeal. The case must be retried. Many of the perplexing problems of negotiable instruments law which were presented to the learned trial

judge may not arise on retrial.' Since the general adoption of the Uniform Negotiable Instruments Law, enlarging the field of available precedents, prudence dictates that desirable uniformity should be maintained. by exercising great care in the creation of precedents.

The judgment and order appealed from are reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.

BROWN, J., disqualified and not sitting.