488 P.2d 698

Frank Boyce MARQUESS, a married man
dealing with his sole and separate
property, Appellant,

v.

Leslie SPANER and Ethel Spaner, hus-
band and wife et al., Appellees.

No. 1 CA–CIV 1205.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 15, 1971.

Rehearing Denied Oct. 18, 1971.

Review Denied Nov. 23, 1971.

Herbert Mallamo, Phoenix, for appellant.

Philip T. Goldstein, Ltd. by Philip T. Goldstein, Phoenix, for appellees.

CASE, Judge.

This appeal is taken from a judgment entered against Marquess, appellant herein, and the trial court's denial of Marquess' motion for new trial.

The action was commenced by lenders, plaintiffs in the trial court, as a foreclosure action. Marquess raised the defense of usury. The matter was tried to the court which made extensive findings of fact and conclusions of law. The portion of the trial court's findings set forth below outlines generally the underlying facts necessary for an understanding of this matter.

"1. That plaintiffs Spaner and Robinson were and are residents of Maricopa County, Arizona, and that plaintiffs Pittelman were and are residents of the State of New York.

2. That defendants Marquess and Feinstein were and are residents of Maricopa County, Arizona.

3. That on or about October 31, 1966, defendant Marquess made executed and delivered unto plaintiffs a promissory note and a second mortgage * * * to secure an indebtedness in the sum of $8,500.00, with interest at the rate of 8% per annum, said mortgage being against the real property popularly described as 6540 North Central Avenue, Phoenix, Arizona, * * *.

4. That the real property described in said mortgage and the entirety thereof is situated in Maricopa County, Arizona.

5. That the plaintiffs were the owners and holders of said mortgage and note, * * *

6. That defendant Marquess failed to make the installment due under said promissory note on September 15, 1967, and defaulted in the payment of any subsequent installments thereon.

7. That defendant Marquess failed to pay real property taxes on the mortgaged property for the first half of 1967 prior to the date of delinquency thereon.

8. That plaintiffs noticed defendant Marquess of intention to exercise their option under the terms of the mortgage to accelerate and demanded payment of the remaining principal together with interest, and that the principal balance remaining unpaid at said time was $7,558.-40, and that interest from August 15, 1967, has accrued.

9. That on October 31, 1966, Gerald Hart and his wife were the sole owners of Provident Mortgage Company and Guardian Funding Company which were two separate corporate entities.

10. That defendant Marquess contacted Gerald Hart as representative of Provident Mortgage Company in response to a newspaper advertisement for the purpose of borrowing money to pay back taxes on the mortgaged property.

11. That defendant Marquess executed a brokerage contract * * * agreeing to pay a commission of $2,500.00 to Provident Mortgage Company for procurement of an $8,500.00 loan with Provident Mortgage Company, by the terms of said contract, to act as broker for Marquess.

12. That plaintiffs supplied $8,500.00, each providing one-third thereof, but the money was not provided until after the brokerage contract was signed and prior to that time plaintiffs were not contacted by Provident with respect to said loan.

13. That Guardian Funding Company acted as escrow agent in handling the lending transaction and that plaintiffs did not sign the escrow agreement.

14. That plaintiffs had no economic interest in either Provident Mortgage or Guardian Funding on October 31, 1966,

and none was either an officer, director or employee of either at that time, but plaintiff Robinson did serve as an officer of Provident from February 1, 1967, to October 15, 1967.

15. That plaintiffs had purchased numerous mortgages from Provident, both before and after October 31, 1966, and on numerous occasions both before and after said date plaintiffs appeared as mortgagees on mortgages which were handled through Provident and that the aggregate amount of said transactions involved hundreds of thousands of dollars.

16. That plaintiffs also purchased mortgages through other brokers throughout the country and Provident did business with other lending sources in the transaction of its business as a mortgage broker, but plaintiffs' business with Provident involved a substantial percentage of its business.

17. That in connection with the loan to defendant Marquess, none of the plaintiffs knew of the brokerage charge of $2,500.00 by Provident; and none received any part thereof, but plaintiffs had the understanding with regard to all mortgages from Provident that any charges would not be borne by the lenders.

18. That Provident acted as collection agent for plaintiffs on the Marquess loan as well as other mortgages of plaintiffs which were handled by Provident, and Provident made no charge for said service.

19. That the loan in the instant case was 8% net-net to the lenders and all charges were borne by the borrower including escrow charges, recordation fees, title insurance, other insurance, in addition to the brokerage commission.

20. That plaintiff Robinson is a close personal friend of Gerald Hart and was so on October 31, 1966, and about that time they had breakfast together on many occasions and discussed money matters, including loans such as the one here involved, but the other plaintiffs were only remote in their relationship to Provident and its personnel."

Marquess questions findings of fact 6, 8, 14 and 17. On review we are required to accept the findings of fact as true unless they are clearly erroneous or unsupported by any credible evidence. Rule 52(a) Ariz.R.Civ.P., 16 A.R.S.; Bass Investment Co. v. Banner Realty, Inc., 103 Ariz. 75, 436 P.2d 894 (1968). After reviewing the record we are convinced that the above-mentioned findings are based on credible evidence and therefore cannot be disturbed.

Marquess further argues that the facts do not support the legal conclusions made by the court. In regard thereto, this Court is at liberty to draw its own legal conclusions from the facts. Cantlay & Tanzola v. Senner, 92 Ariz. 63, 373 P.2d 370 (1962); Tuab Mineral Corp. v. Anderson, 3 Ariz.App. 512, 415 P.2d 910 (1966). The following are the trial court's conclusions of law relevant to this appeal:

"1. That plaintiffs are entitled to have their said mortgage foreclosed upon the real property and premises covered by said mortgage, and hereinabove described, and the proceeds of sale of said property applied to the payment of said sums due upon the debt secured by said mortgage, counsel fees, costs of this action, and expenses of the sale of the property.

2. That plaintiffs are entitled to an award of reasonable attorneys' fees in this cause in the sum of $1500.00.

3. That defendant Marquess on November 1, 1967, was in breach and default on the mortgage on two grounds, (1) failure to make installment payments when due, and (2) delinquency in payment of the real property taxes.

4. That at the time of the loan in question neither Gerald Hart nor Provident Mortgage were agents of the plaintiffs nor any of them for making the loan to defendant Marquess.

5. That Provident Mortgage was the agent of defendant Marquess in making the loan in question.

6. That the loan to defendant Marquess was not usurious.

\* \* \* \* \* \*

8. That defendant Marquess is personally liable to plaintiffs upon said debt and note aforesaid in the following sums:

(1) The principal sum of $7,558.40, with interest at the rate of 8% per annum from August 15, 1967 until paid;

(2) The principal sum of $2,288.34, for plaintiffs' advances pendente lite, with 8% interest per annum thereon from November 1, 1967 until paid;

(3) The sum of $1500.00 as and for plaintiffs' reasonable attorneys' fees;

(4) The sum of $155.15 as and for plaintiffs' taxable costs herein."

■ Marquess' main argument on appeal is that Provident Mortgage was the lenders' agent, thereby attributing Provident's commission to the lenders, causing the loan to be usurious.[1] The question of agency is one of law unless the facts upon which the relationship is said to exist are conflicting, under which circumstances the question of the existence of an agency is one of fact for the trier of fact. Eckhardt v. Greeley National Bank, 79 Col. 337, 245 P. 710 (1926); Wittemann v. Sands, 238 N.Y. 434, 144 N.E. 671 (1924). Furthermore, the question of whether a particular charge is a cloak for evading the usury laws where the evidence is conflicting is one of fact for the trier of fact. Sulger v. Maslin, 90 Ariz. 70, 365 P.2d 1113 (1961); Murphy v. Fidelity Investment Co., 161 Okl. 48, 17 P.2d 472 (1932). The trial court's conclusion that Provident was Marquess' agent in making the loan and lenders' agent in collecting the loan is reasonably supported by the evidence and will not be set aside.

Marquess relies on the case of Valley National Bank of Phoenix v. Milmoe, 74 Ariz. 290, 248 P.2d 740 (1952), for the proposition that an agency cannot be formed where the agent on account thereof will be compelled to assume inconsistent and incompatible duties in regard to a pre-existing agency. For this doctrine to affect the outcome herein, the fact of an initial agency, i. e., between Provident and the lenders, must have existed prior to the agency between Marquess and Provident. As previously mentioned, this set of circumstances is not present herein.

We note further that no fiduciary conflict as mentioned above exists under the court's finding that Provident acted as the lenders' agent for collection. The agency relationship beween Provident and Marquess was for the limited purpose of securing a loan, and the fee or commission relative thereto was paid on the making of the loan. At that time their limited relationship ended and Provident became collecting agent for the lenders, so no conflict occurred.

Marquess argues that the trial court's conclusions are inconsistent with the following passage from Modern Pioneers Insurance Company v. Nandin, 103 Ariz. 125, 131–132, 437 P.2d 658, 664–665 (1968):

"\* \* \* If, however, we continually expand the list of permissible items, it will eventually be possible for the lender to contract out all of his overhead, add the contractual payout to the interest, and obtain the maximum interest as his net profit instead of his gross profit from which his expenses must be paid. A typical example of this is the frequent requirement that the borrower pay for a

---

1. Section 44–1202 A.R.S., 1956 reads: "No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods or things in action, than eight dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest." This law was amended by Chapter 79 § 4 Laws of 1969, to raise the legal interest rate to 10%.

service which checks twice a year to see that the borrower has paid the taxes on the property mortgaged for security. Before the presence of such services, the lender had to check the taxes, or demand to see the tax receipts. If he had a large number of loans he might pay an employee to do this. This was as much a part of his overhead as his rent. It was not the intent of the usury statute that the lender should be allowed to collect the maximum rate plus his overhead."

In both Grady v. Price, 94 Ariz. 252, 383 P.2d 173 (1963), another case which discussed the propriety of charges exacted from the borrower by the lender, and Nandin, the lender was deemed to have received the specific charges in addition to the interest rate. In the instant case, since no agency existed between the lenders and Provident at the inception of the loan the additional charges are not attributed to the lender. The statement above indicating a lender cannot contract out his entire overhead and still receive the legal maximum interest rate is inapplicable herein. The various specific charges incurred by the borrower were deemed properly charged under Nandin and Grady, and there is no showing that the lenders' entire overhead, whatever that may be, was borne by the borrower. The evil the Supreme Court in Nandin and Grady envisioned was a situation wherein the lender charged the borrower a fixed percentage additional costs determined on the basis of the lenders' overhead cost per dollar loaned.

■ Marquess further argues that since the lenders received free collection services from the broker, the broker's commission charged to the borrower included the collection expense, thus making the loan usurious. Though no specific finding of fact in this regard was made, the contrary assumption can be implied from finding No. 11. Moreover, the trial court will be deemed to have made every finding necessary to support the judgment. In re Estate of Harber, 104 Ariz. 79, 449 P.2d 7 (1969); Arizona Commercial Mining Co. v. Iron Cap Copper Co., 29 Ariz. 23, 239 P. 290 (1925). Since, as we have previously discussed, the question of whether a particular charge is a subterfuge to cloak usury is a question of fact, and since we find credible evidence to support the trial court's finding, we find no error.

■■ Marquess also complains of error in the trial court's refusal to admit into evidence a letter written on Provident's letterhead, signed with the name Gerald Hart, which dealt with collection of the loans and which used the pronoun *our* in reference to the loan. The typed initials "NT" appeared beneath the written name. Marquess asserts this letter to be proof that Provident considered it in an agency relation with the lenders, i. e., it considered that the note was the property of both. We feel the trial court properly excluded the letter since Hart testified the name signed was not his signature; he had no recollection of the letter; and Hart's secretary Nancy Terry did not appear to testify. Moreover, we find the letter cumulative evidence of the fact that Provident acted as the lenders' agents for collection, a fact found by the court. Thus, at most, the court's ruling was harmless error.

For the foregoing reasons, the judgment is affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.