533 P.2d 78

Frank WARREN and Joanne Warren, his wife, dba Warren Properties, Appellants,

v.

MANGELS REALTY, an Arizona Corporation, Helen Mangels, an unmarried woman, Charles Taraldson and Elizabeth Taraldson, his wife, Appellees.

No. 2 CA–CIV 1737.

Court of Appeals of Arizona, Division 2.

March 24, 1975.

Rehearing Denied April 23, 1975.

Review Denied May 13, 1975.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellants.

Bilby, Thompson, Shoenhair & Warnock, by Marvin S. Cohen, Tucson, for appellees.

## OPINION

KRUCKER, Judge.

This appeal seeks review of a summary judgment in favor of appellees dismissing one count of appellants' complaint.[1] The substance of appellants' claim against appellees was that the latter had breached a fiduciary duty thereby depriving appellants of an interest in certain real property.

The appellees' motion for summary judgment was based on the pleadings, specified depositions, and two affidavits appended thereto. Their position was that there was no genuine issue as to any material fact and they were entitled to judgment as a matter of law.

The undisputed facts are as follows. On or about August 13, 1969, Bea Padilla (hereinafter referred to as Padilla), owner of the real property involved in this action, and Mangels Realty entered into an agreement which contained the following terms: (1) the broker was given the exclusive right to sell the property for a period of 24 months; (2) Padilla agreed to accept a minimum price of $107,000 for the property with a standard realty commission of six percent to be paid upon that amount and any amount in excess of the minimum sum would be divided equally between her and the realtor; and (3) Padilla had the right to terminate it on 90 days' written notice. The agreement was executed by Taraldson, a salesman for the broker, and also provided that the listing would be automatically terminated in the event that Taraldson not remain in Mangels' employ.

At the end of 1970 or the beginning of 1971, Taraldson showed the Padilla property to appellant, Frank Warren (hereinafter referred to as Warren). Taraldson had previously acted as salesman for Mangels in connection with the sale of two other parcels in Tucson to Warren and in each instance the seller had paid the commission.

After seeing and investigating the property, Warren submitted a written offer to Padilla, through Mangels, to purchase the property at a price of $240,000 on terms and subject to rezoning and the performance of certain drainage work. On March 9, 1971, a new offer was submitted by Warren to purchase the property for $232,000 on terms and subject to rezoning, but without requirement of any drainage work. The price reduction and the elimination of the drainage work requirement was the result of Warren's contacts and discussions with the owners of adjacent property, whom we shall refer to as the Johnston group, concerning their working together to solve a mutual drainage problem.

On March 24, 1971, Padilla, through her attorney, gave Mangels written notice of termination of the listing agreement effective 90 days from that date. Although Warren was aware that Mangels had an exclusive listing on the property, he was not aware of the terms of the listing agreement until April 5, 1971, when he was furnished a copy by Mangels.

Padilla refused to accept the Warren offers of February 4 and March 9 for several reasons: she did not like the rezoning contingency, was upset at the size of the broker's commission, and did not want to sell to someone from California. Warren and Mangels verbally agreed that Warren would pay Mangels a $25,000 commission so that Padilla could receive a sales price of $232,000 net, but this agreement was never reduced to writing nor submitted to Padilla. Warren never retracted the rezoning condition from his previous offers.

On or about April 10, 1971, Taraldson advised Warren that the Johnston group had been in contact with Padilla and that she was willing to sell to them provided she was released from any liability to

---

1. The two remaining counts set forth claims against other individuals but the subject judgment of dismissal is appealable since it contains the requisite language of Rule 54(b), 16 A.R.S.

Mangels for commission. On April 14, 1971, Warren and his employee, Colbourne, met with the Johnston group, Mangels and Taraldson in the office of Mangels' attorney in an effort to arrive at an agreement by which the Johnston group would purchase the property from Padilla and then share it with Warren.[2] The Johnston group was to purchase the property for $232,000 and a $35,000 commission was to be paid to Mangels by Warren and Johnston. Either later that day or the following day, Johnston and Padilla executed a sales agreement under the terms of which the Johnston group purchased the property from Padilla subject to the obligation of the Johnston group to obtain a full release from Mangels. (Mangels did not participate in this transaction.) On April 15, again in the office of Mangels' attorney, Johnston advised Warren that he did not recognize any agreement with him and was buying the property independent of any claim of interest by Warren.

The Johnston group then proceeded to negotiate with Mangels, through Mangels' attorney, to obtain a release of Padilla with regard to the Padilla-Mangels commission agreement. Mangels made various attempts to protect Warren but Johnston refused to execute any agreement with Warren concerning the Padilla property. Ultimately, Mangels agreed to execute a release of Padilla in exchange for the obligation of the Johnston group to pay Mangels $64,250.00. (The total commission which Mangels would have been entitled to receive on the $232,000 sale under the terms of the listing agreement would have been $70,000.00.)

Warren's testimony on deposition was that the only basis for his complaint against Mangels was the failure to prevent the sale by Padilla to the Johnston group, i. e., Mangels should not have executed the release.

He testified:

"Q. Then, your complaint against Mangels here is that they did not keep Johnston from buying; is that correct?

A. That they did not, that they did not protect us and they did not see to it that we, that the agreement was not followed as we had understood it.

*　*　*　*　*　*

Q. As you sit here today, you don't know of anything they did wrong, as far as their relationship with you is concerned, through the end of April 14, 1971?

A. That's correct."

Also:

"Q. And on April 14, all of the actions of Helen Mangels and Charles Taraldson in the negotiations were quite consistent with their attempting to assist you in purchasing the property; is that correct?

A. Yes.

Q. Now, back to my question about what it was, what was it on April 15, then, that occurred that you are complaining of here in this lawsuit?

A. That if she could not sell to Johnston without the Mangels clearance, that on the next day they do sell to Johnston without the Mangels' clearance, or they give their clearance, which I feel is in, violates their trust to me.

Q. Then, that's really what this suit against Mangels is all about, in your mind, isn't it, that they gave their clearance for Padilla to sell to Johnston; is that correct?

A. Yes, it is.

Q. Then, you felt that they had a duty to you not to clear that sale, is that correct?

A. That's correct."

Appended to the motion for summary judgment were affidavits executed by Mangels and Taraldson. Each stated that

---

2. The other two counts of appellants' complaint allege that such an agreement was reached and that the Johnston group held the property as constructive trustees.

during the life of the listing agreement between Mangels and Padilla, there had been no communication to Padilla that the affiant was acting as an agent for Warren. These affidavits are uncontroverted in the record.

Whether or not an agency relation exists is a question of law for the court where the material facts from which it is to be inferred are not in dispute. Marquess v. Spaner, 15 Ariz.App. 342, 488 P.2d 698 (1971); 3 C.J.S. Agency § 547. If, on motion for summary judgment the record before the court shows there is no genuine dispute as to any material fact and that only one inference can be drawn from those undisputed material facts, and based on the undisputed material facts, the movant is entitled to judgment as a matter of law, summary judgment is appropriate. Dutch Inns of America, Inc. v. Horizon Corporation, 18 Ariz.App. 116, 500 P.2d 901 (1972).

The record clearly reflects that the relationship between Padilla and Mangels was that of principal-agent. Therefore, as to Padilla, a fiduciary relationship existed and Mangels owed to her a duty of utmost good faith and loyalty. Baker v. Leight, 91 Ariz. 112, 370 P.2d 268 (1962). Vivian Arnold Realty Co. v. McCormick, 19 Ariz.App. 289, 506 P.2d 1074 (1973). When Mangels undertook to represent Padilla in the sale of her property, Mangels was precluded from acting on behalf of Warren without Padilla's consent. Valley Nat. Bank of Phoenix v. Milmoe, 74 Ariz. 290, 248 P.2d 740 (1952). The uncontroverted affidavits reflect that Padilla had not consented to Mangels' representation of Warren in the Warren-Padilla negotiations concerning the subject property and Warren's mental characterization of Mangels as his "agent" could not by some magic process convert Mangels into one.

There is no question that Warren knew that Mangels had been engaged by Padilla as exclusive agent to effect the sale of her property. As stated in Ledirk Amusement Co. v. Scheckner, 133 N.J.Eq. 602, 33 A.2d 894 (1943):

"'As a general rule, though subject to many exceptions, the same person may not represent opposite parties. An agent employed by one party is presumed, throughout the transaction, to be acting for that principal and not for the opposite party. * * * *the fact that one party puts faith in the agent of another does not shift the agency.'* Rocco v. Geiger, 113 N.J.Eq. 583, 168 A. 44." 33 A.2d at 896 (Emphasis added)

Under the circumstances of this case, Warren could not enforce any claim against Mangels for breach of duty as Warren's agent. *Ledirk*, supra; Restatement (Second) of Agency § 391, Comment (g).

Furthermore, if Warren's claim against Mangels was predicated upon the Warren-Johnston transaction, assuming such existed, there likewise is no claim for relief. Construing the evidence most favorable to Warren's point of view, the most that can be said is that Mangels was attempting to bring Warren and Johnston together. Therefore, Mangels was no more than a "middleman" and no fiduciary relation to Warren existed. Barber's Supermarket, Inc. v. Styker, 84 N.M. 181, 500 P.2d 1304 (1972), cert. den. 84 N.M. 180, 500 P.2d 1303; Batson v. Strehlow, 68 Cal. 2d 662, 68 Cal.Rptr. 589, 441 P.2d 101 (1968).

We find no error in granting appellee's motion for summary judgment and therefore affirm.

HOWARD, C. J., and HATHAWAY, J., concur.